[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 22, 2006
THOMAS K. KAHN
CLERK

No. 06-11588
Non-Argument Calendar

_____

D. C. Docket No. 05-00093-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANGEL RUBEN CASTILLA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(November 22, 2006)**

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Angel Ruben Castilla appeals his conviction for conspiracy to distribute and

to possess with intent to distribute five kilograms or more of cocaine, in violation

of 21 U.S.C. § 846. After a thorough review of the record, we affirm.

Castilla was indicted along with Roberto Ramirez and two others for conspiracy to distribute and to possess with intent to distribute five kilograms or more of cocaine.[1]

At trial, Kendall Brown testified for the government in exchange for a lighter sentence in his drug-related conviction. According to Brown, his source for drugs was a man from Texas named Chiky, whom Brown knew through Ramirez. Brown and Castilla had known each other for about three years and were friends. After a while, Brown realized that Castilla also was involved in selling drugs and approached Castilla about his supplier. Chiky did not speak English and Brown used Castilla as his interpreter to negotiate deals. At times, Castilla would call Brown when Chiky was in town. Brown met Chiky at Castilla's house two or three times and Brown would purchase drugs each time. Brown often saw drugs at Castilla's house and Brown saw Chiky give Castilla drugs. Brown also observed other people at Castilla's house during drug buys.

According to Brown, if Chiky was unavailable, Castilla purchased drugs from a man named Coyote. Castilla also arranged for Coyote to sell to Brown, and Brown would meet Coyote at Castilla's house. Castilla was present at each

---

[1] Ramirez was acquitted and the other two entered plea agreements.

transaction and helped count the money.

Okaloosa County Sheriff's officer Frederick Lithgow testified that he interviewed Castilla after Castilla was arrested and Castilla made a voluntary statement to police.[2] In his statement, Castilla admitted his involvement with others in a conspiracy to distribute cocaine in north Florida. Castilla specifically identified a man named Chiky as his supplier. Castilla was able to describe Chiky and knew Chiky was from Texas. Castilla also admitted acting as Chiky's interpreter negotiating drug deals with Brown and others in exchange for $500 per transaction. Castilla further admitted that he received 2 ½ kilograms of cocaine to distribute. Lithgow was present during a search of a house belonging to a man named Garcia, also known as "Flocko." At the house, police found cell phones and drugs paraphernalia.

Officer Corey Aittama was present during the interview and confirmed that Castilla informed police that Chiky was supplying multi-kilo quantities of cocaine, that Castilla distributed drugs and acted as Chiky's translator, and he identified Coyote as another supplier.

Jairo Ferrera Quintero, who was cooperating with authorities in exchange for a lighter sentence in his drug case, testified that he saw Chiky deliver drugs to

---

[2] Miranda v. Arizona, 384 U.S. 436, 458-71, 86 S.Ct. 1602, 1619-26, 16 L.Ed.2d 694 (1966). The court found that Castilla had been read his rights and had voluntarily made the statement.

Castilla, that he had received drugs directly from Castilla, and that he saw Chiky and Castilla exchange drugs and money. According to Quintero, he delivered drugs for Castilla on three occasions to repay money that he had borrowed to get an attorney for his brother Mario Quintero.

The government submitted Brown's cell phone as evidence; the phone contained numbers for Chiky, Coyote, and Castilla. Phone logs showed numerous calls between Brown, Castilla, Chiky, Coyote, Flocko and Quintero.

At the close of the government's case-in-chief, Castilla moved for judgment of acquittal, which the court denied.

Castilla testified in his own defense, admitting that he knew Coyote, Flocko, Quintero, Brown, and Chiky, and that those five men were involved with drugs. He further admitted that he had translated for Brown and Chiky, but denied it had anything to do with drug deals. Castilla denied that he told police he was involved with drugs or that he was involved in any deals with Brown. Castilla further denied dealing drugs with Coyote and using Quintero to sell or deliver drugs. He stated that Quintero and Brown were lying about his involvement. Castilla explained that he told police Chiky had given him $500 to buy supplies for a bar-b-que. He further admitted that he received drugs from Chiky for his own personal use, but stated that he had received only a few ounces from Chiky over six

months, and not two-and-a-half kilograms as the police had testified. According to Castilla, he was concerned about Chiky's drug dealings and tried to contact narcotics officers, but was unsuccessful. He could not explain, however, why the phone logs did not show any calls to narcotics officers. According to Castilla, the police were out to get him and were trying to put him in jail to make him testify against the main drug distributers.

Castilla renewed his motion for judgment of acquittal, which the court again denied. The jury convicted Castilla, specifically finding that the amount of drugs involved was five kilograms or more. The court sentenced him to 169 months imprisonment. Castilla now appeals.

Castilla argues that the evidence was insufficient to support his conviction because the connection between him and the co-conspirators was tenuous at best and there was no direct evidence linking him to any agreement to sell drugs. He asserts that Brown and Quintero are unbelievable, and he calls into question the testimony of the law officers, challenging their memories of the interview.

We review sufficiency of the evidence claims de novo, viewing the evidence in the light most favorable to the government. United States v. Faust, 456 F.3d 1342, 1345 (11th Cir. 2006); see also United States v. Munoz, 430 F.3d 1357, 1367 (11th Cir. 2005), cert. denied, 126 S.Ct. 2305 (2006). This court must decide

whether a reasonable juror could have found the defendant guilty beyond a reasonable doubt. Id.

"To sustain a conviction for conspiracy to possess cocaine with intent to distribute, the government must prove beyond a reasonable doubt that (1) an illegal agreement existed; (2) the defendant knew of it; and (3) the defendant, with knowledge, voluntarily joined it." United States v. Hernandez, 433 F.3d 1328, 1333 (11th Cir. 2005); United States v. McDowell, 250 F.3d 1354, 1365 (11th Cir. 2001). The government may prove the existence of the conspiracy and the defendant's participation in it through circumstantial evidence. United States v. Mercer, 165 F.3d 1331, 1333 (11th Cir. 1999). Although mere presence will not support a conspiracy conviction, it is a factor the jury may consider when determining if the defendant was a knowing and intentional participant in the offense. Hernandez, 433 F.3d at 1333.

"[U]ncorroborated testimony of an accomplice may be enough to support a conviction if the testimony is not on its face incredible or otherwise insubstantial." United States v. Garcia, 405 F.3d 1260, 1270 (11th Cir. 2005) (quoting United States v. Butler, 792 F.2d 1528, 1536 (11th Cir. 1986)). This court defers to a jury's credibility determination unless it is "unbelievable on its face." Id. (citing United States v. Rivera, 775 F.2d 1559, 1561 (11th Cir. 1985)); see also United

States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005) (explaining that this court is bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant); United States v. Glinton, 154 F.3d 1245, 1258 (11th Cir. 1998). By deciding to testify, a defendant faces the risk that the jury will disbelieve his testimony. United States v. Rudisill, 187 F.3d 1260, 1268 (11th Cir. 1999).

Here, the evidence was sufficient to support the convictions. The crux of Castilla's testimony is that the government's witnesses were lying and that their testimony was unbelievable. Brown and Quintero both testified that they had seen Castilla with drugs or selling drugs. And Brown testified that Castilla acted as a translator for deals with Chiky and participated in deals with Coyote. Castilla denied his participation. The jury, as the factfinder, was free to disbelieve Castilla's version of the events. Contrary to Castilla's argument, neither Brown's nor Quintero's testimony is unbelievable on its face. Moreover, the testimony of the two officers confirmed Castilla's involvement. The jury was free to conclude that these witnesses were more credible than Castilla.

Accordingly, because there was sufficient evidence to support the conviction, we AFFIRM.