[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11139
Non-Argument Calendar

_____

D. C. Docket No. 05-14075-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESSIE LEE LONGORIA,
JUAN GERALDO ARREDONDO,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 10, 2007)**

Before ANDERSON, DUBINA and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Juan Geraldo Arrendondo appeals his conviction for possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). Arrendondo argues that his conviction should be overturned because the district court erroneously denied his motion to suppress incriminating statements that he made to law enforcement after his arrest.

Appellant Jessie Lee Longoria appeals his 63-month sentence for conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. § 846. Longoria argues that the district court erred by (1) applying a two-level enhancement for obstruction of justice, and (2) calculating his offense level based on a finding that he was responsible for 417.6 grams of cocaine.

## I. Arrendondo's Appeal

We first address Arrendondo's appeal. Specifically, Arrendondo argues that he did not knowingly and intelligently waive his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), when he spoke to law enforcement officers because his rights were read to him in English instead of his native language of Spanish. Thus, he contends that the district court erred in denying his motion to suppress.

We review the denial of a motion to suppress under a mixed standard of review, reviewing the district court's findings of fact for clear error and its

application of law to the facts *de novo*. *United States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 748 (2006). Further, all facts are viewed in the light most favorable to the party that prevailed in district court. *Id.* We must accept a district court's credibility determination "unless we are left with the definite and firm conviction that a mistake has been committed." *United States v. Chirinos*, 112 F.3d 1089, 1102 (11th Cir. 1997) (internal quotations and citation omitted). When deciding the ultimate issue of the voluntariness of a defendant's confession, we may substitute our independent judgment after a review of the entire record. *Cannady v. Dugger*, 931 F.2d 752, 753-54 (11th Cir. 1991).

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda*, the Supreme Court considered the scope of the Fifth Amendment privilege against self-incrimination and held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. at 444, 86 S. Ct. at 1612. The Supreme Court articulated a two-pronged right against self-incrimination: the right to remain silent, and the right to have counsel present during custodial interrogation. 384 U.S. at 444-45, 86 S. Ct. at 1612. "The law in

3

this area is clear: once an accused requests counsel, the officer cannot ask questions, discuss the case, or present the accused with possible sentences and the benefits of cooperation." *United States v. Gomez*, 927 F.2d 1530, 1539 (11th Cir. 1991).

An accused may waive his right against self-incrimination, so long as (1) the defendant voluntarily relinquished his rights as the product of a free and deliberate choice, rather than through intimidation, coercion, or deception; and (2) the defendant made his decision with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995). "If a defendant cannot understand the nature of his rights, he cannot waive them intelligently." *Miller v. Dugger*, 838 F.2d 1530, 1539 (11th Cir. 1988). A waiver of *Miranda* rights is effective "[o]nly if the totality of the circumstances surrounding the interrogation reveal[s] both an uncoerced choice and the requisite level of comprehension." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410 (1986) (internal quotation and citation omitted). A written waiver "is not inevitably either necessary or sufficient to establish waiver." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757, 60 L. Ed. 2d 286 (1979).

Once an accused has invoked his right to counsel, he cannot be subjected to

4

further interrogation until counsel has been provided to him, even if he has been advised of his rights. *Gomez*, 927 F.2d at 1537. However, the accused may waive his right by reinitiating a conversation with law enforcement authorities. *Id; see also Henderson v. Singletary*, 968 F.2d 1070, 1073-74 (11th Cir. 1992).

In this case, Arrendondo admits that, although he initially indicated his desire to speak with an attorney before speaking to the law enforcement officers, he later initiated the conversation in which he made the incriminating statements. He does not challenge the substance of the *Miranda* warnings or allege that he was coerced into confessing; rather, he argues only that he did not understand English. However, the evidence indicates that Arrendondo spoke fluent English and engaged in conversations with the law enforcement officers in no other language but English before his rights were read to him. There is no evidence that Arrendondo asked for or needed an interpreter. Thus, the district court's finding that Arrendondo understood English is not clearly erroneous. After Arrendondo's rights were read to him in English, he stated, in English, that he understood his rights. Accordingly, we conclude from the record that Arrendondo knowingly, voluntarily, and intelligently waived his *Miranda* rights.

## II. Longoria's Appeal

We now turn to Longoria's appeal of his sentence. We review the district

5

court's application of the Sentencing Guidelines *de novo* and its underlying factual findings for clear error. *United States v. Pope*, 461 F.3d 1331, 1333 (11th Cir. 2006). Clear error will be present when "we are left with a definite and firm conviction that a mistake has been committed" by the district court. *United States v. Crawford*, 407 F.3d 1174, 1177 (11th Cir. 2005) (citation omitted).

*A. Obstruction of Justice Enhancement*

Under U.S.S.G. § 3C1.1, a two-level enhancement is appropriate if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." This provision applies to conduct including "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, comment. (n. 4(b)). Perjury in this context means "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002) (citation omitted).

"When applying this enhancement, the district court [should] make specific findings as to each alleged instance of obstruction by identifying the materially false statements individually . . . . However, a general finding that an enhancement is warranted suffices if it encompasses all of the factual predicates necessary for a

6

perjury finding." *Id.* (citations omitted). For the district court to make a finding that a defendant perjured himself, four elements must be present: "(1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." *Id.* at 763 n.4. We review the district court's factual findings necessary for an obstruction of justice enhancement based on perjury for clear error and "accord great deference to the district court's credibility determinations." *Id.* at 763 (citations omitted).

Here, the district court individually identified material, false statements that Longoria made during his testimony at trial. The record supports the district court's conclusion that Longoria intentionally made these false statements. Therefore, we conclude that the district court's findings were not clearly erroneous, and the district court properly applied the § 3C1.1 obstruction of justice enhancement.

B. *Base Offense Level Calculation*

To calculate the base offense level for a drug conspiracy offense, the district court must determine the quantity of illegal drugs properly attributable to the defendant. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir.), *cert.*

7

*denied*, 545 U.S. 1127, 125 S. Ct. 2935, 162 L. Ed. 2d 866 (2005); U.S.S.G. § 2D1.1(c). We review this factual determination for clear error. *Id.*

The district court should consider "all acts and omissions committed, aided, abetted . . . or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction" to make its determination. *Id.* at 1296 (quoting U.S.S.G. §1B1.3(a)(1)(A)). In cases involving drugs, "the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S.S.G. § 1B1.3, comment. (n.2). The district court may consider relevant acquitted conduct when making sentencing calculations, so long as the Guidelines are applied as advisory, the conduct is proven by a preponderance of the evidence, and the sentence imposed does not exceed the statutory maximum sentence authorized by the jury's verdict. *United States v. Faust*, 456 F.3d 1342, 1348 (11th Cir.), *cert. denied*, 127 S. Ct. 615 (2006).

When a defendant raises an objection to the drug quantity used in calculating his Guideline sentence, "the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *Rodriguez*, 398 F.3d at 1296. Although preponderance of the evidence is a relaxed evidentiary standard, "it does

8

not grant the court a license to sentence a defendant in the absence of sufficient evidence when that defendant has properly objected to a factual conclusion." *Id.* (citation omitted).

Here, the evidence presented at trial supports the district court's finding that Longoria was responsible for 417.6 grams of cocaine. The evidence established that Longoria supplied cocaine for three purchases, totaling 417.6 grams. To the extent that Longoria argues that the district court's finding is clearly erroneous because he was acquitted of possessing the cocaine on the dates of the purchases, this argument is foreclosed by our precedent. *Faust*, 456 F.3d at 1348. Moreover, the record demonstrates that the district court applied the Guidelines as advisory and imposed a sentence significantly below the 20-year maximum sentence authorized by the jury's verdict. *See* 21 U.S.C. § 841(b)(1)(C). Therefore, we find no error in the district court's sentencing of Longoria.

In conclusion, we discern no reversible error as to either defendant. Therefore, we affirm Arrendondo's conviction and Longoria's sentence.

**AFFIRMED**.