[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 21, 2011
JOHN LEY
CLERK

No. 09-16428
Non-Argument Calendar
_____

D. C. Docket No. 09-20345-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BUD PRATT WILLIAMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 21, 2011)

Before BLACK, HULL and MARTIN, Circuit Judges.

PER CURIAM:

Bud Pratt Williams appeals his convictions for (1) conspiracy to possess with the intent to distribute methylenedioxymethamphetamine (MDMA), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, (2) possessing with the intent to distribute MDMA, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2, and (3) attempting to distribute MDMA, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. Williams raises several issues on appeal, which we address in turn.

I.

Williams first asserts evidence of (1) phone calls placed by him from prison; and (2) a cutting agent (cut)[1] found in his car after his arrest were improperly admitted into evidence at trial.[2] We normally review a district court's evidentiary rulings for abuse of discretion. *United States v. Baker*, 432 F.3d 1189, 1202 (11th Cir. 2005). When a party challenges an evidentiary ruling for the first time on appeal, we review for plain error only. *Id.*

---

[1]"Cut" is a substance commonly used by drug dealers to dilute pure cocaine.

[2]Williams also challenges the admission of a firearm. When the district court admitted the handgun into evidence, it expressly asked Williams if he wished to object, and Williams expressly declined. Thus, we will not review admission of the firearm, even for plain error. *See United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003) (holding that under the invited-error doctrine, where a party stipulates to the admission of evidence, he is precluded from objecting to the same evidence on appeal).

We employ a three-part test to determine whether the admission of evidence of other criminal activities was proper: "[f]irst, the evidence must be relevant to an issue other than the defendant's character; [s]econd, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; [t]hird, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." *United States v. Matthews*, 431 F.3d 1296, 1310-11 (11th Cir. 2005). Evidence is not extrinsic if it is: (1) an uncharged offense arising out of the "same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Ramsdale*, 61 F.3d 825, 829 (11th Cir. 1995).

The evidence of the cut was not extrinsic to the crime charged, as it was necessary to complete the story of the crime. *See Ramsdale*, 61 F.3d at 829. The cut was also probative to the charges Williams faced, as evidence of a cutting agent is probative as to whether a defendant dealt drugs. *See United States v. Faust*, 456 F.3d 1342, 1346 (11th Cir. 2006) (providing that the presence of a cutting agent at a house where a defendant was arrested supported an inference

3

that the defendant was dealing drugs). Accordingly, the district court did not abuse its discretion in allowing this evidence at trial.

Further, Williams cites to no binding law from the Supreme Court or this Court indicating the admission of the phone calls for impeachment purposes was in error under this Court's three-part test regarding admission of other wrongdoing. As no controlling precedent supports Williams' alleged error, there is no plain error. *See United States v. Eckhardt*, 466 F.3d 938, 948 (11th Cir. 2006) ("An error is plain if it is obvious and clear under current law.").

## II.

Williams next contends the evidence was insufficient to sustain his conspiracy conviction. We review the sufficiency of the evidence de novo, drawing all reasonable inferences in the government's favor. *See United States v. Evans*, 473 F.3d 1115, 1118 (11th Cir. 2006).

To support a conspiracy conviction under 21 U.S.C. § 846, the Government must establish beyond a reasonable doubt that (1) a conspiracy existed, (2) the defendant had knowledge of it, and (3) he voluntarily joined it. *United States v. Thompson*, 422 F.3d 1285, 1290 (11th Cir. 2005). A conspiracy to distribute drugs "may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to [a] purchaser." *Id* at 1292.

4

There is sufficient evidence to supports Williams's conspiracy conviction. The Government established at trial the existence of a continuing relationship between Williams and Cox, amongst others, in which Williams would supply Cox with MDMA. *Thompson*, 422 F.3d at 1292 (11th Cir. 2005). The jury was entitled to believe the phone calls between the CI and Cox, Cox and Williams, and Williams and Henderson were the calls between a drug buyer, a drug seller, the seller's supplier, and the ultimate source of the drugs. *See United States v. Lyons*, 53 F.3d 1198, 1202 (11th Cir. 1995) (providing that a jury is free to choose among reasonable constructions of the evidence in a case).

Further, evidence of Williams's prior conviction for cocaine trafficking was also presented and undermines his contention that he was merely present at the drug transactions. *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1224 (11th Cir. 1993) (holding that "evidence of prior drug dealings is highly probative of intent in later charges of conspiracy and distribution of a controlled substance.") The jury was also entitled to find that Williams's presence at two consecutive drug transactions contradicted his "mere presence" defense, and indicated he was a willing participant in the conspiracy. *See United States v. Adams*, 799 F.2d 665, 672 (11th Cir. 1986) (providing that participation was a logical inference to be

drawn from a defendant accompanying others to two drug transactions). Thus, we conclude there was sufficient evidence to support Williams's convictions.

III.

Williams next alleges the Government committed prosecutorial misconduct by improperly vouching for a witness, Donovan Jonas. When a party raises a prosecutorial misconduct claim for the first time on appeal, we review only for plain error. *United States v. Newton*, 44 F.3d 913, 920 (11th Cir. 1995).

To establish prosecutorial misconduct during closing arguments, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant. *United States v. Iglesias*, 915 F.2d 1524, 1529 (11th Cir. 1990). Improper vouching may occur in two ways: "[f]irst, the prosecution may place the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity. . . . [s]econdly, a prosecutor may implicitly vouch for the witness' veracity by indicating that information not presented to the jury supports the testimony." *United States v. Sims*, 719 F.2d 375, 377 (11th Cir. 1983) (citations omitted).

In this case, while the Government argued that Jonas's testimony was credible, it did not do so on the basis of the reputation of the Government. The Government also did not improperly vouch for Jonas's credibility by relying on

evidence not before the jury. The Government's mention to the "public record" during closing argument was not improper, as the Government provided testimony as to what was included in the public record. Furthermore, the record indicates other evidence referred to by the Government was also before the jury. As such, the Government did not improperly vouch for Jonas's credibility by referring to these items. *See Sims*, 719 F.2d at 377.

Williams's argument that the Government may have improperly denied not promising to help Jonas with his deportation also is without merit. Other than the fact that Jonas remains in jail, nothing in the record indicates a deal existed between Jonas and the Government. Regardless, the Government presented ample evidence of Williams's guilt besides Jonas's testimony. As such, Williams cannot meet his burden under the plain error standard of review.

IV.

Lastly, Williams argues the court abused its discretion by dismissing his pro se motion for a new trial without holding an evidentiary hearing. We review the denial of a motion for a new trial for an abuse of discretion. *United States v. Puentes*, 50 F.3d 1567, 1578 (11th Cir. 1995). Likewise, we review a district court's denial of an evidentiary hearing for an abuse of discretion. *United States v. Massey*, 89 F.3d 1433, 1443 (11th Cir. 1996).

7

The movant of a Federal Rule of Criminal Procedure 33(b) motion based on newly discovered evidence must establish that:

> (1) the evidence was discovered after trial, (2) the failure of the defendant to discover the evidence was not due to a lack of due diligence, (3) the evidence is not merely cumulative or impeaching, (4) the evidence is material to issues before the court, and (5) the evidence is such that a new trial would probably produce a different result.

*Jernigan*, 341 F.3d at 1287 (quotation omitted).

The district court did not abuse its discretion in denying Williams's motion for a new trial on its merits, without holding an evidentiary hearing. The court correctly concluded the evidence in Williams's motion was merely impeaching and did not warrant a new trial. *See id.* (requiring a movant to establish newly discovered evidence is not merely impeaching). Moreover, Williams failed to meet the fifth *Jernigan* prong that a new trial would probably have produced a different result. Accordingly, we affirm Williams's conviction.

**AFFIRMED.**

8