[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-11042
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 16, 2012
JOHN LEY
CLERK

D. C. Docket No. 8:09-cr-00346-VMC-TBM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LYNDA WILSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 16, 2012)

Before EDMONDSON, BARKETT, and MARCUS, Circuit Judges.

PER CURIAM:

Lynda Wilson appeals her 41-month (above-guidelines) sentence for

making a false statement on a mortgage application, in violation of 18 U.S.C. § 1014. No reversible error has been shown; we affirm.

In completing a residential loan application, Wilson stated falsely that she earned an annual salary of about $60,000 from a local law firm when, in truth, she earned only about $27,000 from the firm. The rest of Wilson's stated income represented the proceeds from CCL Services, a fraudulent business that Wilson and her husband Charles created to steal money from Charles's employer. As a result of Wilson's false statements, she and Charles obtained an initial mortgage from Coast Bank to build a new home and obtained a refinanced mortgage through Citi Mortgage. But for Wilson's concealment of the true source of her income, the banks would not have approved the loans. Based on the offense conduct and Wilson's criminal history, the probation officer calculated a guidelines range of 18 to 24 months' imprisonment.

The Presentence Investigation Report ("PSI") also included -- in a section titled "Offense Behavior Not Part of Relevant Conduct" -- detailed information about Wilson's involvement in the fraudulent operations of CCL Services. In sum, Wilson and Charles created CCL Services, held it out to be a legitimate third-party debt collection agency, and began doing business with Charles's employer, The Tampa Tribune. Charles, a credit manager at The Tampa Tribune, then

approved payment of various fraudulent invoices from CCL Services and diverted various refund checks intended for legitimate customers into the CCL Services bank account. The Wilsons continued this elaborate scheme over a 10-year period, during which they amassed more than $1 million in fraudulent income.

Wilson objected to the inclusion of this information in the PSI because she had never pleaded guilty to the conduct, but she stated expressly that she did not object to the information's factual accuracy. After considering the PSI, the parties' arguments, and the 18 U.S.C. § 3553 factors, the district court imposed a 17-month upward variance and sentenced Wilson to 41 months' imprisonment. The court explained that, although Wilson's involvement with CCL Services was not "relevant conduct" for purposes of U.S.S.G. § 1B1.3, her role in the fraudulent scheme warranted an upward variance.

On appeal, Wilson argues that the district court violated her Sixth Amendment right to a jury trial when it varied upward based on alleged criminal conduct that was neither admitted by her nor determined by a jury. We review constitutional challenges to a sentence de novo. United States v. Lyons, 403 F.3d 1248, 1250 (11th Cir. 2005). And we review the district court's factual determinations for clear error. United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004). To conclude that a factual finding is clearly erroneous, we

"must be left with a definite and firm conviction that a mistake has been committed." Id.

In determining an appropriate sentence, the district court "may consider, without limitation, any information concerning the background, character and conduct of the defendant." U.S.S.G. § 1B1.4; see also 18 U.S.C. § 3661. It is well-established that a sentencing court can even consider "criminal acts for which a defendant has not been charged or has been acquitted as long as those acts are proved by a preponderance of the evidence," and the court treats the sentencing guidelines as advisory. United States v. Lindsey, 482 F.3d 1285, 1294 (11th Cir. 2007).

That Wilson's ongoing involvement in the CCL Services fraud scheme is pertinent to her background, character, and conduct is clear. And we are unconvinced that the district court clearly erred in determining that Wilson's participation in the scheme was proved by a preponderance of the evidence. First, although Wilson objected to the inclusion of the factual details of the fraud scheme in the PSI, she did not challenge their factual accuracy. As a result, she admitted these factual allegations for purposes of sentencing. See United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010). In addition, the government presented the testimony of a United States Secret Service investigator and several

4

exhibits -- including emails, bank records, and various business records -- which established that Wilson was an active participant in the fraud.  Because the district court expressly treated the sentencing guidelines as advisory and Wilson's criminal conduct was proved by the preponderance of the evidence, the district court was permitted to consider that conduct in formulating Wilson's sentence.  See Lindsey, 482 F.3d at 1294.[1]

We are also unpersuaded by Wilson's attempt to distinguish her case -- where the court considered criminal acts that were still the subject of pending criminal charges -- from cases where the sentencing court considered uncharged criminal acts or criminal charges that had already been dismissed or acquitted.  In addressing why a sentencing court can consider acquitted conduct proved by a preponderance of the evidence, the United States Supreme Court explained that "sentencing enhancements do not punish the defendant for crimes of which [s]he

---

[1]Contrary to Wilson's contentions, the district court did not violate the rule established in United States v. Booker, 125 S.Ct. 738 (2005).  "Booker holds that 'the Sixth Amendment right to trial by jury is violated where under a mandatory guidelines system a sentence is increased because of an enhancement based on facts found by the judge that were neither admitted by the defendant nor found by the jury.'"  United States v. Dudley, 463 F.3d 1221, 1228 (11th Cir. 2006) (emphasis in original).  Because the district court in this case treated the sentencing guidelines as advisory, no Booker error existed.  See id.

We also note that no Apprendi error existed because Wilson was sentenced below the statutory maximum of 30 years' imprisonment.  See Apprendi v. New Jersey, 120 S.Ct. 2348 (2000) (concluding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

5

was not convicted, but rather increase h[er] sentence because of the manner in which [s]he committed the crime of conviction." United States v. Faust, 456 F.3d 1342, 1347 (11th Cir. 2006) (citing United States v. Watts, 117 S.Ct. 633, 636 (1997)).

The same rationale applies in this case. Wilson's crime of conviction -- making a false statement on a mortgage application -- was connected directly to her role in the CCL Services fraud scheme. That Wilson's criminal conduct was still the subject of pending criminal charges when the court announced her sentence did not undermine the court's authority to consider that conduct in determining the appropriate sentence for Wilson's offense of conviction.[2]

AFFIRMED.

---

[2]In addition, we note that the government moved to dismiss the remaining counts against Wilson immediately after the court announced Wilson's sentence. And we are unwilling to distinguish Wilson's case based solely on the precise timing of the government's motion to dismiss these remaining counts.